## MATTHEWS et al. v. CONTINENTAL ROLL & STEEL FOUNDRY CO.

### No. 9081.

District Court, W. D. Pennsylvania.

Feb. 5, 1941.

Reed, Smith, Shaw & McClay and Dipple & Oliver, all of Pittsburgh, Pa., for plaintiffs.

Patterson, Crawford, Arensberg & Dunn, of Pittsburgh, Pa., and F. Allan Minne and Cromwell, Greist & Warden, all of Chicago, Ill., for defendant.

GIBSON, District Judge.

After verdict for plaintiffs, the defendant has moved for judgment in its favor upon its motion to that effect made at the trial and reserved by the court, or, in the alternative, for a new trial.

On April 26, 1933, one of the plaintiffs, P. W. Matthews, a mechanical engineer, applied for a patent for a four-high rolling mill, and on October 6, 1936, the patent was granted. On February 26, 1934, he applied for a patent on a flying shear which was granted on February 9, 1937. Prior to any approach of Matthews to the defendant, interests in the applications had been assigned to the other plaintiffs.

On August 16, 1934, plaintiff Matthews, having theretofore interviewed other officials of manufacturing companies, presented his applications to Lloyd Jones, a vice president of the defendant company, who became interested in them and later caused them to be exhibited to the president of his company, J. T. Osler. After several interviews with company officials, a number of drafts of licenses from plaintiffs to the defendant were prepared, but none was executed. Plaintiffs, however, allowed the defendant to offer for sale rolling mills and flying shears as covered by Matthews' patent applications.

While attempts were being made by plaintiffs to secure a license agreement from defendant, plaintiff Matthews became a salaried employe of defendant. His function was to develop designs for machinery to be made in accordance with his patent applications, and to prepare bids and specifications for such machinery for submission to possible purchasers from defendant. A number of offers to sell the mill and flying shear of Matthews' patent applications were made to concerns interested in that art. Of these but one flying shear equipment was ever manufactured. The defendant had a contract with the American Sheet and Tin Plate Company to build for it a mill and flying shear, and, after considerable hesitation, concluded to try Matthews' application for the shear part of the equipment. The construction of the shear was begun in the Spring of 1935 under the supervision of Matthews, and the equipment was installed by him in the plant of the American Sheet and Tin Plate Company early in 1937, and remained there, under frequent tests, for about six months. The shear failed to function properly and the defendant was compelled to take it out of the Tin Plate Company's plant and restore the purchase money paid, at a total loss to it of $135,000. With the failure of

the shear in July, 1937, came the end of Matthews' employment with defendant.

On February 3, 1938, without prior de‧mand therefor, plaintiffs instituted the instant action to recover an amount to compensate them for the use of their patent applications (later patents) by defendant.

No license agreement was ever signed by defendant. Plaintiffs claim that one was presented to defendant's president to which he gave verbal assent, but which he did not sign. The said agreement being for a period of more than a year, and unexecuted, it was agreed by all, could not be the basis of plaintiffs' action, under the Indiana Statute of Frauds, Burns' R.S.Ind.1914, § 7462, nor could any other oral agreement. This being so, the case was submitted to the jury only upon the proposition that where one has performed services for another upon a verbal contract which is void because of the Statute of Frauds, but where the services were rendered pursuant to a promise to enter into a written agreement which was not kept, the person rendering the service is entitled to recover the fair value of his services. The negotiations with the defendant were conducted by plaintiff Matthews almost entirely. He testified, in substance, that his patent applications were turned over to defendant for exploitation upon the distinct declaration and agreement on the part of defendant's officers, that a written license, setting forth the royalties and compensation of plaintiffs, would later be executed. In this he was supported by other witnesses for the plaintiffs.

The defendant's testimony was to the effect that plaintiffs were anxious to have the Matthews' applications backed by practical use and promoted by a responsible manufacturer, and this desire led to the use of them by defendant, and not any unqualified promise by defendant to sign a license agreement. A license agreement was contemplated, defendant asserts, but only after the patent application constructions had been tested by use and found to be practicable. The test having proved the only device built to be of no practical use, defendant avers that it is not liable to plaintiffs in any amount. Upon these divergent claims the case was submitted to the jury. If they found in favor of the plaintiffs' contention, they were instructed to determine the value of the use of the patent applications to defendant and render a verdict for plaintiffs according to that finding; and, on the other hand, if they found defendant's claim to be correct, they were told to return a verdict for the defendant. Under such instructions they returned a verdict for the plaintiffs, and it must be assumed that they accepted the plaintiffs' claim that the right to use the patent applications had been granted upon the promise of an immediate license agreement by defendant.

Even so, contends the defendant, no proper basis for a recovery exists.

■ Using the word in its ordinary sense, no "damages" have been proven by plaintiffs. Nor has it been shown that defendant was ultimately enriched by its use of the plaintiffs' patent applications. On the contrary, the evidence discloses a very material loss to it. In the ordinary case in which a plaintiff has been allowed to recover from a defendant who has pleaded the Statute of Frauds, the right has been based upon the unjust enrichment of the defendant and the loss to the plaintiff. Plaintiffs contend, however, that their claim is not to be measured by the ultimate result to defendant of its use of the Matthews applications. They assert that the right to use the applications was of a definite value at the time the right was first granted by plaintiffs and assumed by the defendant under promise of a written license agreement. In support of this contention they called William H. Parmelee as a witness. Mr. Parmelee is an attorney of twenty years experience specializing in patent law. After testifying to considerable attention on his part to patents relating to the rolling of steel, and familiarity with the state of that art in 1934, and experience in a good deal of litigation over patents in that art, he testified that he had examined the patent applications for the four-high rolling mill, the flying shear, and for a method and apparatus for controlling the heat of rolls (for which application had not been made when the right of use was granted and assumed). In answer to a long hypothetical question, in which the plaintiffs' testimony was reflected, and in which he was asked to express his opinion "of the reasonable value, or market value, of the rights which were enjoyed and used by the defendant between August, 1934, and June, 1937", he testified, over objection, that such rights were worth $25,000 to $30,000 to defendant. Upon cross-examination he testified that he had made no examination of the patents for the purpose of de-

termining their validity, but had relied upon the presumption which was incident to their issuance. Nor had he considered the fact that the flying shear had failed upon a long test.

■ This testimony was received by the court with considerable doubt and hesitation. Attention has been called to General Paint Corporation v. Kramer, 10 Cir., 68 F.2d 40, 42, from which the following is quoted: "In Jenkins Petroleum Process Co. v. Sinclair Refining Co. (C.C.A.1) 62 F.2d 663, 665, the court stated how the value of patent rights may be determined, as follows: 'Its money value may be estimated from the nature of the invention disclosed, its place in the art to which it relates, the step which the inventor took, and the change which it effected in the practice of the art. These facts, and other relevant circumstances, may be supplemented by opinion evidence of value, as in the case of real estate.' "

In that case witnesses acquainted with the art under consideration testified to the reasonable value of the inventions and patent rights, and to the amount of reasonable royalties therefor. To that extent their testimony parallels that of the witness in the instant case. But they were testifying concerning a patent which had gone into successful operation. The witness in this case was testifying as to the value of patents which had failed in the one test made and whose validity was presumed by him, without study of them, by the fact that patents had been issued. His testimony as to the patents was apparently based upon his opinion of their value as a gambling proposition at the time they were turned over to the defendant for exploitation. Plaintiff Matthews' testimony, evidently accepted by the jury complemented the testimony of Mr. Parmelee in respect to the standing of the patents in the art.

■ This testimony as to the reasonable value of the patents is important, because it is practically all which relates to their value. Several unexecuted license contracts were offered, but not accepted by the defendant as setting forth the value of the services which had been orally agreed upon by persons authorized to do so for defendant. No testimony appears which indicates that any agreement for the payment of any amount as royalty had been made by plaintiffs with any officer of defendant entitled to represent it. Although not buttressed by all of the facts which supported

the testimony approved in General Paint Corporation v. Kramer, supra, the testimony of reasonable value in the instant case seems to be in the same class as that offered in that case. This court, following that decision, will deny the respective motions of defendant for judgment upon the reserved point and for a new trial.